ANDREW L. PACKARD (State Bar No. 168690)
Email: andrew@packardlawoffices.com
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Phone: (707) 782-4060

Barak Kamelgard (Bar No. 298822)
Email: barak@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>      Plaintiff,<br><br>   v.<br><br>INEOS COMPOSITES US, LLC,<br><br>      Defendant. | Case No. 2:23-09642-DMG-BFM<br><br><br>**[PROPOSED] CONSENT DECREE** |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant INEOS COMPOSITES US, LLC, ("Defendant") owns and operates a facility at 6608 E. 26th Street, Commerce, California 90040, under Waste Discharger Identification Number 4 19I028350 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of the manufacture of unsaturated polyester and vinyl ester resins, loading and unloading of materials by railcar, truck and tank wagon, outdoor storage of materials and products, storage and handling of solid wastes, outdoor liquid container storage, outdoor storage of raw materials, building and grounds maintenance, and vehicle and equipment fueling, maintenance, and cleaning.  The Facility is categorized under Standard Industrial Classification ("SIC") Code 2821, covering "Plastics Material and Synthetic Resins, and Nonvulcanizable Elastomers."

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit")[1], and the Federal Water

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on September 11, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on November 14, 2023, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:23-

09642-DMG-BFM ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River, and ultimately to the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

# I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

# II.    AGENCY REVIEW AND DEFINITIONS

## A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

4

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined in General Permit Section X.H.6.

g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.      "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.      "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation at least 24 hours prior to a rain event above 0.1 inches as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90040, Bell Gardens, CA, USA".[2]

k.      "MIP" means a Monitoring Implementation Plan.

l.      "PPT" means the Pollution Prevention Team.

m.      "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.      "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.      "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.      "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.      "SWPPP" means a Storm Water Pollution Prevention Plan.

r.      "Term" means the period between the Effective Date and the "Termination Date."

s.      "Termination Date" means the latest of:

          i.      June 30 following Three (3) years from the Effective Date;

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.9744&lon=-118.1425.

ii.   seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in subparagraph 11.s.i, above; or,

iii.  seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

t.   "Wet Season" means the period beginning October 1st of any given calendar year and ending May 31st of the following calendar year.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.   <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.   <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those (1) necessary to comply with BAT/BCT; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14.   <u>Rain Gauge/Sensor.</u> Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all

precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15.    <u>Hydrologic Evaluation & Implementation of Advanced BMPs</u>.  Within forty-five days (45) days of the Effective Date, Defendant shall complete and share with Plaintiff, a comprehensive written hydrologic evaluation to determine the most appropriate volume-based and flow-based Advanced BMPs required to meet the Design Storm criteria set forth in Section X.H.6 of the General Permit ("Treatment Control Study").  Within fourteen (14) days thereafter, the Parties shall meet and confer on the adequacy of the Treatment Control Study and determine a schedule for Advanced BMP implementation at the Facility before October 1, 2024.

16.    <u>Bench Scale Media Testing for Optimal Zinc Removal Media</u>.  Within forty-five days (45) days of the Effective Date, Defendant shall complete and share with Plaintiff, a comprehensive written study using bench scale media testing to determine the optimal media mix for filters, including without limitation filter socks and downspout filters, to be used at the Facility to address zinc exceedances ("Media Study").  Within fourteen (14) days thereafter, the Parties shall meet and confer on the adequacy of the Media Study, which shall be used to inform the Treatment Control Study and to better understand and improve the process by which the concentration of zinc can be reduced from the Facility's storm water prior to discharge.  In addition, all bench scale storm water testing for metals during the Term shall include the quantification of the dissolved and Total portion of each Metal.

17.    <u>Additional Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than October 1, 2024Defendant shall develop and implement the following BMPs at the Facility:

        a.    Install permanent concrete berms, curbs, or similarly effective physical barriers that prevent storm water discharges from any point other than the designated Discharge Points;

8

b.   Remove and replace or coat all galvanized roof surfaces from which storm water flows into any drainage area;

c.   Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas at least once per month outside of the Wet Season, once per month during the Wet Season, and shall make best efforts within forty eight (48) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

d.   Employ and secure new filtration socks/in-drain filters at all Discharge Points using the optimal media for zinc removal as determined by the Media Study referenced above, and configure such filtration socks/in-drain filters to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendant shall, thereafter, employ and secure wattles/filters/filtration in the same manner annually prior to the start of the Wet Season, no later than September 15th;

e.   During the Wet Season, and as necessary, inspect and replace the filtration socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the filtration socks are not sufficiently reducing pollutant concentrations;

f.   Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any filters and

9

wattles deployed at the site, removal or covering of any exposed waste material, and relocation of uncontained or uncovered debris bins and trash cans under cover;

g.    Within twenty-four (24) hours prior to a Forecasted Rain Event, cover all feed stock and raw materials, and pipe storage racks, to the extent practicable, covering debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

h.    Remove, and prevent the storage of, all, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the entire property;

i.    Institute a vehicle maintenance program that ensures:

    i.    no vehicle maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

    ii.    vehicle maintenance activities occur only in designated work areas or beneath covered maintenance areas; and,

    iii.    when vehicle maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

Within seven (7) days of implementing the improvements to drainage or roofing set forth in Paragraphs 17(a)-(b) above, Defendant shall provide written and

1  photographic evidence to LA Waterkeeper that such BMPs have been timely

2  implemented and are fully operational, as set forth above.

3       **B.   HEIGHTENED STORM WATER SAMPLING AT THE FACILITY**

4      18.   Defendant shall develop a monitoring program consistent with the

5  General Permit. During the Term, Defendant shall collect samples of storm water

6  discharge from each Discharge Point from at least four Qualifying Storm Events as

7  required by the Industrial General Permit (i.e., two Qualifying Storm Events during

8  the first half of the Reporting Year and two Qualifying Storm Events during the

9  second half of the Reporting Year).  Such sampling shall take place as soon as

10  possible within the four (4) hour period required by the General Permit at § XI.B.5.

11  If Defendant would have been required to collect samples during a rain event

12  pursuant to this Consent Decree had such rain event produced a discharge sufficient

13  to enable sampling, but Defendant did not collect samples because such rain event did

14  not produce a discharge, then Defendant shall document the inability to sample by

15  taking photographs during the rain event of each Discharge Point from which no

16  discharge occurred. Defendant shall submit such photographs to LA Waterkeeper by

17  email, along with rain gauge/sensor data for the date of such rain event, within five

18  (5) days of a written request for such records by LA Waterkeeper.

19      19.   <u>Sampling Parameters</u>. All samples collected pursuant to this Consent

20  Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

21      20.   <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall

22  deliver all samples to a California-certified environmental laboratory for analysis

23  within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be

24  completed onsite using a portable instrument that is calibrated and used according to

25  the manufacturer's instructions.

26      21.   <u>Detection Limit</u>. Defendant shall request that the laboratory use

27  analytical methods adequate to detect the individual contaminants at or below the

28  values specified in the General Permit and Table 1 below.

22.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

23.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Zinc | 0.159 mg/L | NEL |
| pH | 6.0-9 s.u. | NAL |
| Phosphorus | 2.0 mg/L | NAL |
| TSS | 100 mg/L | NAL |
| O&G | 15 mg/L | NAL |

24.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any storm water sample from the Facility exceeds any numeric limit contained in Table 1 two (2) or more times per discharge point. An Exceedance shall constitute a violation of this Consent Decree unless Defendant prepares and submits an Action Plan as described in Paragraph 25 below.

25.    <u>Action Plan for Table 1 Exceedances</u>. Beginning with the 2024-2025 Reporting Year, and for the remainder of the Term, if Defendant has (i) an unauthorized non-storm water discharge in violation of Paragraph 12, (ii) discharges

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for phosphorus is either increased to 2.1 mg/L or decreased to 1.9 mg/L, such new NAL, and not 2.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for phosphorus being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

untreated storm water in a smaller than Design Storm scenario, or (iii) has storm water samples demonstrating an Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility, eliminating untreated storm water discharges in smaller than a Design Storm, and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within sixty (60) days of the discharge of untreated storm water in a scenario smaller than a Design Storm, the unauthorized non-storm water discharge, or the receipt of the final laboratory report demonstrating the Exceedance, as applicable. For the 2024-2025 Reporting Year only, an Action Plan shall only be required if Defendant intends to implement additional BMPs, and shall not be required if Defendant only intends to optimize its initial BMPs in efforts to achieve optimal BMPs prior to the implementation of additional BMPs. If an Action Plan is not required pursuant to the foregoing, Defendant shall confirm to Plaintiff that it only intends to optimize its initial BMPs but shall nonetheless share with Plaintiff any optimization testing and evaluations of such initial BMPs for purposes of Plaintiff providing feedback and input.

       a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s), the applicable discharge of untreated storm water in a storm event smaller than a Design Storm, and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each contaminant exceedance, applicable discharge in smaller than a Design Storm, and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), Design Storm requirement, and/or unauthorized non-storm water

discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.    <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for consideration, though not required, for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

    i.    <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

    ii.    <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iii.    <u>Advanced Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.   Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.   Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.   Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 30.b below.

e.   Action Plan Payments. Defendant shall pay Two Thousand Dollars ($2,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested or electronic payment to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012.

15

Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.    VISUAL OBSERVATIONS**

26.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

27.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility.  During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility.  Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

28.    <u>Visual Observations Records</u>. Defendant shall maintain observation records, including representative photographs, to document compliance with Paragraphs 26 and 27, above. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an proper, working condition; (ii) whether any

1  repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other

2  conditions that have the potential to lead to pollutant loading in storm water

3  discharges; and (iv) representative photographs of all the foregoing.  Defendant shall

4  provide LA Waterkeeper with a copy of those records within ten (10) business days

5  of receipt of a written request from LA Waterkeeper for those records.

6      29.  <u>Employee Training Program</u>. Within thirty (30) days of the Effective

7  Date, Defendant shall develop and implement an employee training program that

8  meets the following requirements and ensures (1) that there is a sufficient number of

9  employees at the Facility designated to achieve compliance with the General Permit

10  and this Consent Decree ("Designated Employees"), and (2) that these Designated

11  Employees are properly trained to perform the activities required by the General

12  Permit and this Consent Decree ("Training Program"):

13          a.  <u>Materials</u>. Training materials should include, at minimum, a

14              training slide deck;

15          b.  <u>Language</u>. If necessary, the training and training materials shall be

16              available and offered in the language(s) in which relevant

17              employees are fluent. If necessary, Defendant shall provide a

18              translator or translators at all trainings where such translation is

19              likely to improve staff comprehension of the Training Program

20              and improve compliance with this Consent Decree and the

21              General Permit;

22          c.  <u>Training Frequency</u>. Training shall be provided by a QISP

23              familiar with the requirements of this Consent Decree and the

24              General Permit, and shall be repeated as necessary to ensure that

25              all relevant employees are familiar with the requirements of this

26              Consent Decree, the Permit, and the Facility's SWPPP. All

27              relevant new staff shall receive this training before assuming

28              responsibilities for implementing the SWPPP;

d.  <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.  <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.  <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.  <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.  <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) business days of receipt of a written request.

30.  <u>SWPPP Revisions</u>.

a.  <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree to the extent applicable and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

18

i.  A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.  A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii. Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.  A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

v.  A MIP as required by sections XI and X.I of the General Permit;

vi.  A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and,

vii. A Training Program as described above in Paragraph 29.

b.  <u>Additional SWPPP Revisions</u>.

i.  Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and

19

1  submit the complete, updated SWPPP to LA Waterkeeper
2  for LA Waterkeeper's review and comment.
3  ii.  Within thirty (30) days after any changes in industrial
4  activities, sources of industrial pollutants, changes to
5  Discharge Points, or changes to sections of the SWPPP
6  identified in the SWPPP as requiring a SWPPP revision
7  (including but not limited to, changes in Facility contacts or
8  PPT members, changes or additions of BMPs, or changes in
9  or additions of industrial activities that impact storm water
10  discharge), Defendant shall revise the then-current SWPPP
11  to reflect such changes and submit the complete, updated
12  SWPPP to LA Waterkeeper for LA Waterkeeper's review
13  and comment.
14  c.  Review of SWPPP.  For any SWPPP updates pursuant to
15  Paragraphs 30.a. and 30.b., LA Waterkeeper shall have thirty (30)
16  days upon receipt of Defendant's complete SWPPP to provide
17  Defendant with comments. Within thirty (30) days of receiving
18  LA Waterkeeper's comments and proposed changes to the
19  SWPPP, Defendant shall consider each of the comments and
20  proposed changes and either accept them or justify in writing why
21  a change is not incorporated. The Parties agree to work in good
22  faith to resolve any disputes with respect to the SWPPP, and any
23  remaining disputes will be resolved through timely initiation of
24  the dispute resolution procedures in Section IV below. Following
25  its incorporation of proposed modification or additions (if any)
26  into each revised SWPPP, Defendant shall upload the revised
27  SWPPP to SMARTS.
28

20

### E.    COMPLIANCE MONITORING AND REPORTING

31.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least forty-eight (48) hours' notice prior to a dry Site Inspection and twenty-four (24) hours' notice prior to a wet Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 59. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Plaintiff shall provide Defendant with at least forty-eight (48) hours' notice prior to the sampling, and the sampling will be limited to table 1 parameters in this consent decree. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

32.    <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

21

a. Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 59, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b. Within seven (7) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 59, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

33. <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Six Thousand Dollars ($6,000.00) annually. The initial payment shall be made within thirty (30) days of the Entry Date and each subsequent annual payment shall be made by the applicable anniversary of the Effective Date. In the event that there is an additional Site Inspection in a given year to resolve a dispute pursuant to Paragraph 31, Defendant shall reimburse LA Waterkeeper an additional Three Thousand Dollars ($3,000.00) during such year. Payment shall be made within thirty (30) days after any additional Site Inspection. The payment shall be made via check, or electronic means, made payable to: "Los Angeles Waterkeeper" via Certified Mail or via electronic payment return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES AND INTEREST**

34.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River and/or waters tributary to the San Pedro Bay, Defendant shall make a payment in the amount of Sixty Thousand Dollars ($60,000.00) to the Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Forty-Five Thousand Dollars ($45,000) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: "Law Offices of Andrew L. Packard" and delivered by overnight carrier to 245 Kentucky Street, Suite B3, Petaluma, CA 94952 or via electronic payment. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

36.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline.  Defendant shall have five (5) business days from receipt of such notice to respond to LA Waterkeeper, and, if necessary, cure such delinquency. Defendant shall not be considered in breach of the Consent Decree should Defendant cure such delinquency.  If Defendant fails to respond and, if necessary, cure such alleged delinquency within five (5) business days of receipt of LA Waterkeeper's

notice, then Defendant shall pay a stipulated payment of Three Hundred Dollars ($300). Such stipulated payments shall be made by check, or electronic means, payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 34, above. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

37.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date or within the cure period. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check, or electronic means, payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 34, above. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

38.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

39.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the

dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days of the meet and confer.

40.   Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 39, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

41.   In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

42.   Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

43.   Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from

and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

44.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

45.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

46.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

47.     <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

48.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and

[PROPOSED] CONSENT DECREE                                                  Case No. 2:23-09642-DMG-BFM

1  paragraph headings used in this Consent Decree are for reference only and shall not
2  affect the construction of this Consent Decree.

3       49.    Full Settlement. This Consent Decree constitutes a full and final
4  settlement of this matter.

5       50.    Integration Clause. This is an integrated Consent Decree. This Consent
6  Decree is intended to be a full and complete statement of the terms of the agreement
7  between the Parties and expressly supersedes any and all prior oral or written
8  agreements, covenants, representations, and warranties (express or implied)
9  concerning the subject matter of this Consent Decree.

10      51.    Severability. In the event that any provision, paragraph, section, or
11 sentence of this Consent Decree is held by a court to be unenforceable, the validity of
12 the enforceable provisions shall not be adversely affected.

13      52.    Choice of Law. The laws of the United States shall govern this Consent
14 Decree.

15      53.    Diligence. Defendant shall diligently file and pursue all required permit
16 applications for any required BMPs and shall diligently procure contractors, labor,
17 and materials needed to complete all BMPs by the required deadlines.

18      54.    Effect of Consent Decree. Compliance with this Consent Decree does
19 not mean that Defendant is complying with the General Permit, the Clean Water Act,
20 or any other law, rule, or regulation.

21      55.    Negotiated Settlement. The Settling Parties have negotiated this Consent
22 Decree, and agree that it shall not be construed against the party preparing it, but shall
23 be construed as if the Settling Parties jointly prepared this Consent Decree, and any
24 uncertainty and ambiguity shall not be interpreted against any one party.

25      56.    Modification of the Consent Decree. This Consent Decree, and any
26 provisions herein, may not be changed, waived, discharged, or terminated unless by a
27 written instrument, signed by the Parties and approved by the Court. Any request to
28 modify any provision of the Consent Decree, including but not limited to any

deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

57. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

58. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

59. <u>Notice</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: barak@lawaterkeeper.org
Email: ben@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

With copies to:
Andrew L. Packard
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Email: andrew@packardlawoffices.com

If to Defendant:
INEOS Composites US, LLC
Attn: Site Leader
6608 East 26th Street
Commerce, CA 99040
Email: lars.oortgiesen@ineos.com
Email: james.koutras@ineos.com
Phone: (304) 544-9757

With copies to:
Richard Dongell
Murchison & Cumming, LLP
18201 Van Karman Avenue
Suite 950
Irvine, CA 92612
Email: Rdongell@murchisonlaw.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

60.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

[PROPOSED] CONSENT DECREE    Case No. 2:23-09642-DMG-BFM

1    The Parties hereto enter into this Consent Decree and submit it to the Court for

2  its approval and entry as a final judgment.

3

4    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

5  as of the date first set forth below.

6

7  APPROVED AS TO CONTENT:

8
9  Dated: _____August 5___, 2024        By: _____

10                                            Bruce Reznik

11                                            Executive Director
                                             Los Angeles Waterkeeper

12

13  Dated: __Aug 1st__, 2024            By: _____

14                                            Andy Beer

15                                            Senior Vice President, Americas
                                             INEOS Composites US, LLC

16  APPROVED AS TO FORM:

17  Dated: __August 1__, 2024           LAW OFFICES OF ANDREW L. PACKARD

18

19

20                                        By: _____

21                                            Andrew L. Packard

22                                            Attorney for Plaintiff
                                             Los Angeles Waterkeeper

23  Dated: __August 2, 2024__, 2024     MURCHISON & CUMMING, LLP

24

25

26                                        By: _____

27                                            Richard Dongell
                                             Attorney for Defendant

28                                            INEOS COMPOSITES US, LLC

[PROPOSED] CONSENT DECREE                          Case No. 2:23-09642-DMG-BFM

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _____          CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE DOLLY M. GEE
United States District Court Judge

31